USA v. Paul Markun                        CR-95-89-B      04/14/97

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

<u>United States of America</u>

    **v.**                                    Criminal No.  95-89-01-B

<u>Paul Markun</u>

## O R D E R

Paul Markun asks me to reconsider a prior ruling denying his motion to suppress evidence obtained during separate searches of his residence and a rented storage unit.  His primary argument is that the warrants authorizing both searches were based in part on evidence obtained from an earlier illegal search.

## I.

Markun resided at 315 Concord Street in Antrim, New Hampshire.  His residence could not be seen from the street.  A sign stating "private" was posted at the entrance to his driveway and "no trespassing" signs were posted elsewhere on his property.  He also installed a motion detector to warn him if anyone drove

down his driveway.  However, the driveway was not gated and Markun did not produce any evidence suggesting that he ever attempted to exclude members of the public from using the driveway to access his residence.

Antrim Police Officer Mark Cavic drove down Markun's driveway on December 11, 1994.  He did not then know who was living on the property but he had received a tip that drug activity was occurring at the residence.  Cavic stopped his cruiser approximately 25 feet from the residence and Markun immediately came down to speak to him before Cavic could get out of the vehicle.  Cavic told Markun that he was investigating an alarm complaint at a nearby residence.  However, his true purpose in visiting the house was to attempt to learn who was living there and to "get a layout of the property."  After Cavic finished talking to Markun, he backed his cruiser down the driveway and left.  On his way out, he noted the license place number of a vehicle that was parked in the front yard.  Cavic used the license plate number to determine Markun's identity.

The police later used Cavic's information to obtain electric bills, telephone bills, and other information about Markun that in turn were used to obtain the search warrant for Markun's

2

residence. Evidence gathered during the search of the residence was then used to obtain a second warrant to search the rented storage locker.[1]

## II.

Markun argues that the evidence obtained during the search of his residence and the rented storage locker must be suppressed because the warrants authorizing both searches were based on information that was discovered as a result of Cavic's illegal intrusion onto Markun's property. I reject this argument because I conclude that Cavic did not conduct an illegal search.

A person cannot successfully invoke the Fourth Amendment unless he has a reasonable expectation of privacy in the area to be searched. Katz v. United States, 389 U.S. 347, 360 (1967); Oliver v. United States, 466 U.S. 170, 177 (1984). Further, a person does not have a reasonable expectation of privacy in "open fields," which the Supreme Court has defined as "any unoccupied or undeveloped area outside of the curtilage." Oliver, 466 U.S. at 180 n.11. Finally, the court has identified four factors that

---

[1] Both search warrant affidavits are described in my October 6, 1995 Order.

3

must be considered in determining whether an area falls within a home's curtilage: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." United States v. Dunn, 480 U.S. 294, 301 (1987). Whether an area qualifies as curtilage is a question of fact that must be determined by evaluating the totality of the surrounding circumstances. United States v. Benish, 5 F.3d 20, 23 (3d Cir. 1993); United States v. Swepston, 987 F.2d 1510, 1513 (10th Cir. 1993).

The evidence in this case leads inescapably to the conclusion that Markun's driveway was not part of the home's curtilage. The most significant factor warranting this conclusion is that the driveway was open to any member of the public who wished to enter the property.[2] Markun did not place a gate across the driveway to prevent public access, nor was the

---

[2] The signs posted on the property did not prevent people from using the driveway. The "private" sign merely notified members of the public that the driveway was not a public way and the "no trespassing" signs were not posted at the driveway's entrance. Further, Markun's motion detector merely warned him that someone was using the driveway.

driveway part of an enclosed area surrounding the house. Since anyone who wished was free to drive down the driveway and make the same observations that Cavic made, Markun had no reasonable expectation of privacy in his driveway and it cannot be considered part of the curtilage. See United States v. Evans, 27 F.3d 1219, 1229 (7th Cir. 1994) (no reasonable expectation of privacy where public had access to the defendant's driveway); United States v. Ventling, 678 F.2d 63, 66 (8th Cir. 1982) (no expectation of privacy in driveway notwithstanding the "no trespassing" signs posted at the front of the driveway); see also, 1 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 2.3(f), at 506-07 (3d ed.) ("[t]hus, when the police come onto private property to conduct an investigation or for some other legitimate purpose and restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment").

## III.

Markun also argues that I should reconsider my conclusion that he is not entitled to a hearing pursuant to Franks v.

5

Delaware, 438 U.S. 154 (1978). He bases this argument on: (1) a defense investigator's statements attempting to cast doubt on the search warrant affiant's suggestion that Markun's electric bills were unusually high and indicative of a marijuana growing operation; (2) statements from the alleged informant contradicting things that were attributed to him in the search warrant affidavit; and (3) the investigator's statements challenging the search warrant affiant's claim that tool rental facilities such as those that the defendant called often supplied carbon dioxide, a gas that is important in indoor growing operations.

I reject Markun's arguments. First, the investigator's report of statements made by a representative from Public Service Company of New Hampshire and the investigator's own statements concerning his electric bills in no way call into question the search warrant affiant's statements suggesting that Markun was using unusually large amounts of electricity. Second, the alleged informant's statements add no new information to the case since the search warrant affidavit itself reveals that the informant later denied making any incriminating statements against Markun. Finally, the investigator's survey of rental

6

companies does not call into serious question the search warrant affiant's statement that in his experience, equipment rental companies such as those called by the defendant often sell carbon dioxide.

## IV.

For the reasons described above, I deny Markun's motion to reconsider (document no. 50).[3]

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

April 14, 1997

cc:  Brian R. Graf, Esq.
     Terry L. Ollila, Esq.
     Laura J. Brevitz, Esq.
     Frank Bruno, Esq.
     Bruce E. Kenna, Esq.
     Bjorn Lange, Esq.
     United States Marshal
     United States Probation

_____

[3]  Markun's request for an additional hearing is denied as moot because I did not consider the supplemental affidavits that triggered the hearing request.